**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

EXCLUSIVE DOORS AND                              Case No. 19-11829-AJC
WINDOWS, LLC,                                    Chapter 7

       Debtor.

_____/                         Adv. Case No. _____

MARCIA T. DUNN, Chapter 7 Trustee of the
Bankruptcy Estate of EXCLUSIVE DOORS
AND WINDOWS, LLC,

       Plaintiff,

v.

LUIS CARLOS PIMENTEL, an individual;
EXCLUSIVE ACCORDIONS LLC, a dissolved
Florida limited liability company; MIAMI DADE
ACCORDIONS LLC, a dissolved Florida limited
liability company; and ALL STAR SHUTTER LLC, a
Florida limited liability company,

       Defendants.

_____/

**COMPLAINT**

Plaintiff, MARCIA T. DUNN, in her capacity as the duly appointed Chapter 7 Trustee of

the above-captioned main bankruptcy case (the "Plaintiff" or "Trustee") filed by EXCLUSIVE

DOORS AND WINDOWS, LLC (the "Debtor"), by and through undersigned counsel, sues

Defendants, LUIS CARLOS PIMENTEL, an individual ("Pimentel"); EXCLUSIVE

ACCORDIONS LLC, a dissolved Florida limited liability company ("Exclusive Accordions");

MIAMI DADE ACCORDIONS LLC, a dissolved Florida limited liability company ("Miami Dade

Accordions"); and ALL STAR SHUTTER LLC, a Florida limited liability company ("All Star

Shutter") (collectively, the "Defendants"), and alleges:

## JURISDICTION AND VENUE

1.      This is an adversary proceeding brought by the Trustee against Defendants for: (1) declaratory judgment; (2) breach of fiduciary duty; (3) fraud; (4) negligence (5) to avoid and recover fraudulent transfers pursuant to 11 U.S.C. §§ 544, 548 and 550, and *Fla. Stat.* §§ 726.105 and/or 726.106, and 726.108(1)(a), and 26 U.S.C. § 6502(a); (6) unjust enrichment; (7) the imposition of a constructive trust; (8) turnover; and (9) for other relief under applicable non-bankruptcy federal and state law.

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and Fed. R. Bankr. P. 7001.

3.      Venue is proper herein pursuant to 28 U.S.C. §§ 1408 and 1409(d), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Southern District of Florida.

4.      This is a core proceeding for which this Court is authorized to hear and determine all matters and enter final judgment in accordance with 28 U.S.C. § 157(a), (b)(2)(A), (H) and (O).

## PARTIES AND PROCEDURAL BACKGROUND

5.      On February 11, 2019 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition under Chapter 7 of the United States Code.

6.      Plaintiff, MARCIA T. DUNN is the duly appointed and acting Chapter 7 Trustee of the Debtor's bankruptcy estate in the Main Case (the "Estate").

7.      LUIS PIMENTEL ("Pimentel") is an individual residing and transacting business in Miami-Dade County Florida, is subject to the jurisdiction and venue of this Court, and is otherwise *sui juris*.

8. At all relevant times, Pimentel served as the manager, sole member, and owner of the Debtor.

9. Pimentel testified at the Debtor's Section 341 Meeting of Creditors.

10. EXCLUSIVE ACCORDIONS LLC is a dissolved Florida limited liability company transacting business in the State of Florida with its principal place of business in Miami-Dade County, Florida.

11. MIAMI DADE ACCORDIONS LLC is a dissolved Florida limited liability company transacting business in the State of Florida with its principal place of business in Miami-Dade County, Florida.

12. ALL STAR SHUTTER LLC is a Florida limited liability company transacting business in the State of Florida with its principal place of business in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

A. Pimentel's Operation of the Debtor and Related Alter Ego Entities

    a. The Debtor

13. The Debtor was formed and incorporated in Florida on or around August 10, 2016 by Pimentel. The Debtor was primarily in the business of installing hurricane shutters and hurricane impact doors.

14. While the Debtor did maintain some legitimate operations, Pimentel willfully orchestrated and executed an array of egregious "business practices" that resulted in defrauding customers, exposing the Debtor to litigation, regulatory issues, and other claims, deepening the Debtor's insolvency, all while Pimentel enjoyed his ill-gotten gains from the Debtor's coffers.

15. Pimentel acted negligently, recklessly, and/or intentionally in his capacity operating the Debtor.

16.     During all applicable times, the Debtor was insolvent or operated in the zone of insolvency, which calls for not only heightened fiduciary duties, but also in consideration of the Debtor's creditors.

17.     Pimentel's actions or inactions, as the case may be, proximately caused in excess of one million dollars in damages to the Debtor and its creditors.

18.     Among other things, Pimentel, while serving as the manager, sole member, and owner of the Debtor, dissipated hundreds of thousands of dollars to or for his own benefit, including payments for his own personal expenses and lifestyle.

19.     Pimentel, through the Debtor, misappropriated funds, in part, by improperly retaining deposits received from customers for the installation of doors and/or windows while never performing or completing the services contracted for nor delivering the goods contracted for in exchange for the deposits. Numerous instances of the improper retention of such deposits are disclosed on the Debtor's Schedule "E/F".

20.     In order to facilitate the improper retention of customer deposits, Pimentel, through the Debtor, made intentional misrepresentations of material fact, upon which he intended the customers to rely. The customers relied upon Pimentel's misrepresentations to their detriment, as evidenced by the misappropriated deposits paid to the Debtor.

21.     As a result, there now exist numerous claims against the Estate in the Main Case that evidence tens of thousands of dollars paid to the Debtor in deposits for work that was not performed.

22.     Such claims brought against the Estate represent damages incurred as a result of Pimentel's improper retention of deposits, repeated failures to render service to clients, and related deficient, negligent, reckless, and/or intentionally deficient services.

b. <u>Exclusive Accordions</u>

23.      As evidenced by numerous underlying contracts which accompany the claims filed against the Estate, the Debtor also did business as Exclusive Accordions.

24.      According to filings with the Florida Division of Corporations, Exclusive Accordions was incorporated with Pimentel as the sole manager and registered agent, with no other listed officers or directors.

25.      Exclusive Accordions is further listed as doing business at the identical location as the Debtor, and, upon information and belief, performed identical services to that of the Debtor. Upon information and belief, Exclusive Accordions was managed and controlled by Pimentel as an alter ego of the Debtor.

26.      Exclusive Accordions holds a contractor license, which is presently restricted as a result of multiple complaints filed with Miami-Dade County, Florida for the business' failure to fulfill contractual obligations.

27.      Further, the Trustee is aware of the expiration of permits for multiple projects of the Debtor and Exclusive Accordions due to failure to obtain necessary approvals for all required inspections, which expose the business to the imposition of potential fines.

28.      Further, upon information and belief, Exclusive Accordions shared the same personnel, shared the same assets, operated out of the identical physical location, and operated in the same line of business as the Debtor.

29.      Upon information and belief, Exclusive Accordions had substantially the same customers and vendors as the Debtor.

30.      Upon information and belief, at all material times, Pimentel operated Exclusive Accordions an alter ego of the Debtor.

31.    Upon information and belief, Exclusive Accordions failed to follow required corporate formalities with respect its business operations and those of the Debtor.

32.    Pimentel dominated and controlled Exclusive Accordions to such an extent that the entity's independent existence from the Debtor was non-existent.

33.    Upon information and belief, Pimentel misused and misappropriated funds of Exclusive Accordions to his personal benefit and for the payment of his personal expenses in the same manner as he did funds of the Debtor.

c.    Miami Dade Accordions

34.    Upon information and belief, and according to records filed with the Florida Secretary of State, Pimentel also served as the manager of Miami Dade Accordions.

35.    Further, upon information and belief, Miami Dade Accordions shared the same personnel, shared the same assets, and operated in the same line of business as the Debtor.

36.    Upon information and belief, Miami Dade Accordions had substantially the same customers and vendors as the Debtor.

37.    Upon information and belief, at all material times, Pimentel operated Miami Dade Accordions as an alter ego of the Debtor.

38.    Upon information and belief, Miami Dade Accordions failed to follow required corporate formalities with respect its business operations and those of the Debtor.

39.    Pimentel dominated and controlled Miami Dade Accordions to such an extent that the entity's independent existence from the Debtor was non-existent.

40.    Upon information and belief, Pimentel misused and misappropriated funds of Miami Dade Accordions to his personal benefit and for the payment of his personal expenses in the same manner as he did funds of the Debtor.

d. <u>All Star Shutter</u>

41.    Upon information and belief, Pimentel is also involved in the operation and management of All Star Shutter.

42.    Further, upon information and belief, All Star Shutter shared the same personnel, shared the same assets, and operated in the same line of business as the Debtor.

43.    Upon information and belief, All Star Shutter had substantially the same customers and vendors as the Debtor.

44.    Upon information and belief, at all material times, Pimentel operated All Star Shutter as an alter ego of the Debtor.

45.    Upon information and belief, All Star Shutter failed to follow required corporate formalities with respect its business operations and those of the Debtor.

46.    Pimentel dominated and controlled All Star Shutter to such an extent that the entity's independent existence from the Debtor was non-existent.

47.    Upon information and belief, Pimentel misused and misappropriated funds of All Star Shutter to his personal benefit and for the payment of his personal expenses in the same manner as he did funds of the Debtor.

B. <u>The Fraudulent Transfers</u>

48.    Specifically with respect to payments for Pimentel's own personal expenses and lifestyle, prior to the Petition Date, on or about July 2017 through December 2018, the Debtor made transfers to or for the benefit of Pimentel in the net total amount of $335,234.00, as detailed on **Exhibit "A"** attached hereto, which the Trustee incorporates herein by reference, and contains: (i) a list of payments received by Pimentel from the Debtor or made on behalf of Pimentel from the Debtor during the applicable time frame; (ii) the date of each payment; (iii) the amount of each

payment; (iv) the bank account from which each payment was made; and (v) the payee name for each payment made on behalf of Pimentel from the Debtor (collectively, the "<u>Fraudulent Transfers</u>").

49.     Each of the Fraudulent Transfers were made to or for the benefit of Pimentel.

50.     Each of the Fraudulent Transfers were of funds belonging to the Debtor and each of the Fraudulent Transfers was made from accounts that were property of the Debtor.

51.     The Fraudulent Transfers did not relate to the Debtor's business operations.

52.     The Fraudulent Transfers did not confer any benefit upon, nor provide any value to the Debtor or its creditors.

53.     The Debtor's records do not indicate that the Fraudulent Transfers had a connection with or were related to the business of the Debtor.

54.     The Debtor's records do not indicate that Pimentel provided the Debtor with reasonably equivalent value in exchange for the Fraudulent Transfers.

55.     Upon information and belief, the Fraudulent Transfers were made for the personal expenses of Pimentel or for the benefit of other third parties.

56.     The Debtor's records do not indicate that the Debtor was indebted to Pimentel.

57.     As of the time of the Fraudulent Transfers, the Debtor had at least one actual unsecured creditor, including but not limited to the State of Florida Department of Revenue, and other creditors holding unsecured claims which are allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Fraudulent Transfers were avoidable under applicable law, including 11 U.S.C. § 548. [*see e.g.* **Claim 15-1, Main Case**].

58.     The Debtor was insolvent at the time the Fraudulent Transfers were made.

59.     At the time of the Fraudulent Transfers, the Debtor was not generally paying its debts as they came due; had obligations and faced claims beyond the Debtor's ability to pay; and otherwise had liabilities which exceeded the true value of its assets.

60.     Any conditions precedent to bringing this action have been performed, have occurred, have been waived, or have otherwise been excused.

C.     The Debtor's Further Misappropriation of Funds to Pay for his Home and Car

61.     On or about June 1, 2018, Pimentel purchased a home located at 3270 SW 153rd Court, Miami, Florida 33185 (the "153rd Court Property"), for the purchase price of $265,000.00.

62.     Closing documents executed in connection with the purchase of the 153rd Court Property evidence that Pimentel paid a deposit of $4,186.88 to the closing agent by causing the funds to be wired directly from a bank account held by the Debtor.

63.     Further, closing documents executed in connection with the purchase of the 153rd Court Property evidence that Pimentel obtained a loan in the amount of $260,200.00 from Paramount Residential Mortgage Group, Inc. (the "Mortgage"), the proceeds of which were used toward the purchase of the 153rd Court Property..

64.     The Trustee's investigation revealed that Pimentel made the first six Mortgage payments in the monthly amount of $1,908.38 from July 2018 to December 2018 by causing the funds to be paid directly from a bank account held by the Debtor.

65.     Thereafter, beginning in January 2019, and for each payment thereafter, Pimentel began making Mortgage payments for the 153rd Court Property through his personal bank account.

66.     Upon information and belief, the funds in Pimentel's personal bank account that were used to make the Mortgage payments beginning in January 2019, and for each payment

thereafter, were funds which represent fraudulent transfers to Pimentel from the Debtor and/or one of the Debtor's alter ego entities.

67.     Upon information and belief, the funds improperly used by Pimentel to make ongoing payments toward the Mortgage on the 153rd Court Property are funds traceable to either the Debtor and/or one of the Debtor's alter ego entities.

68.     Upon information and belief, Mr. Pimentel presently drives a Tesla automobile.

69.     Upon information and belief, Mr. Pimentel's Tesla is financed through BMO Harris Bank (the "Tesla Loan").

70.     Based upon the Trustee's investigation, beginning in September 2018 and continuing through November 2018, Pimentel made four separate payments in the amount of $900.00 (for a total of $3,600.00) toward the Tesla Loan by causing the funds to be paid directly from a bank account held by the Debtor.

71.     Thereafter, beginning in January 2019, and for each payment thereafter, Pimentel began making payments toward the Tesla Loan through his personal bank account.

72.     Upon information and belief, the funds in Pimentel's bank account that were used to make the Tesla Loan payments beginning in January 2019, and for each payment thereafter, were funds which represent fraudulent transfers to Pimentel from the Debtor and/or one of the Debtor's alter ego entities.

73.     Upon information and belief, the funds improperly used by Pimentel to make ongoing payments on the Tesla Loan are funds traceable to either the Debtor and/or one of the Debtor's alter ego entities.

74.     Upon information and belief, Pimentel made additional improper payments to himself or for his personal expenses from funds that are traceable to the Debtor's alter ego entities.

**RESERVATION OF RIGHTS**

75.    The Trustee is an after-the-fact appointed fiduciary.

76.    The Trustee reserves the right to amend, modify, and/or supplement these and other allegations contained in this Complaint, and causes of action against Pimentel or person or parties affiliated with Pimentel, based on her further investigation.

**COUNT I**
**AVOIDANCE OF FRAUDULENT TRANSFER**
**11 U.S.C. §§ 544(b)(1) and 548(a)(1)(A), Fla. Stat. §§ 726.105(1)(a) and 726.108**
**(against Pimentel)**

77.    The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 76 above as if specifically set forth herein.

78.    The Trustee sues Pimentel pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(A), Fla. Stat. §§ 726.105(1)(a) and 726.108 to avoid the Fraudulent Transfers as an actual fraudulent transfer.

79.    The Debtor made the Fraudulent Transfers in the amount of $335,234.00 to or for the benefit of Pimentel within the four (4) year period prior to the Petition Date.

80.    The Fraudulent Transfers were made with the actual intent to hinder, delay, or defraud a creditor of the Debtor.

81.    As of the time of the Fraudulent Transfers, the Debtor had at least one actual creditor, including but not limited to the State of Florida Department of Revenue, holding an unsecured claim which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Fraudulent Transfers were avoidable under applicable law, including 11 U.S.C. § 548(a)(1)(A), Fla. Stat. §§ 726.105(1)(a) and 726.108.

82.    As a result of the above, the Trustee is entitled to avoid the transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(A) and Fla. Stat. §§ 726.105(1)(a) and 726.108(1)(a).

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Luis Pimentel: (a) declaring the Fraudulent Transfers to be a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(A) and/or Fla. Stat. § 726.105(1)(a); (b) avoiding and recovering the Fraudulent Transfers as a fraudulent transfer pursuant to §§ 544 and 548(a)(1)(A) and Fla. Stat. §§ 726.105(1)(a) and 726.108; (c) awarding to the Trustee, for the benefit of the Estate, pre- and post-judgment interest and costs; and (d) granting such other and further relief as may be just and proper.

## COUNT II
### AVOIDANCE OF FRAUDULENT TRANSFER
### 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B) and Fla. Stat. §§ 726.105(1)(b) and 726.108
### (against Pimentel)

83. The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 76 above as if specifically set forth herein.

84. The Trustee sues Pimentel pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B) and Fla. Stat. §§ 726.105(1)(b) and 726.108 to avoid the Fraudulent Transfers as a constructively fraudulent transfer.

85. The Debtor made the Fraudulent Transfers in the amount of $335,234.00 to or for the benefit of Pimentel within the four (4) year period prior to the Petition Date.

86. The Debtor received less than reasonably equivalent value in exchange for the Fraudulent Transfers, and:

    a) Was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

    a) The Debtor was engaged in business or a transaction, or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to its business or transaction; or

b) The Debtor intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

87.    At the time of the Fraudulent Transfers, the Debtor had at least one actual creditor, including but not limited to the State of Florida Department of Revenue, holding an unsecured claim which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Fraudulent Transfers were avoidable under applicable law, including 11 U.S.C. § 548(a)(1)(B), Fla. Stat. §§ 726.105(1)(b) and 726.108.

88.    As a result of the above, the Trustee is entitled to avoid the transfers pursuant to 11 U.S.C. §§ 544(b)(1) and 548(a)(1)(B) and Fla. Stat. §§ 726.105(1)(b) and 726.108(1)(a).

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Luis Pimentel: (a) declaring the Fraudulent Transfers to be a fraudulent transfer pursuant to 11 U.S.C. § 548(a)(1)(B) and/or Fla. Stat. § 726.105(1)(b); (b) avoiding and recovering the Fraudulent Transfers as a fraudulent transfer pursuant to 11 U.SC. §§ 544 and 548(a)(1)(B) and Fla. Stat. §§ 726.105(1)(b) and 726.108; (c) awarding to the Trustee, for the benefit of the Estate, pre- and post-judgment interest and costs; and (d) granting such other and further relief as may be just and proper.

### COUNT III
### AVOIDANCE OF FRAUDULENT TRANSFER
### 11 U.S.C. § 544(b)(1) and Fla. Stat. §§ 726.106(1) and 726.108
### (against Pimentel)

89.    The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 76 above as if specifically set forth herein.

90.    The Trustee sues Pimentel pursuant to 11 U.S.C. § 544(b)(1) and Fla. Stat. §§ 726.106(1) and 726.108(1)(a) to avoid the Fraudulent Transfers as a constructively fraudulent transfer.

91.    The Debtor made the Fraudulent Transfers in the amount of $335,234.00 to or for the benefit of Pimentel within the four (4) year period prior to the Petition Date.

92.    The Debtor received less than reasonably equivalent value in exchange for the Fraudulent Transfers.

93.    The Debtor was insolvent at the time of the Fraudulent Transfers or became insolvent as a result of the transaction(s).

94.    At the time of the Fraudulent Transfers, the Debtor had at least one actual creditor holding an unsecured claim, including but not limited to the State of Florida Department of Revenue, which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Fraudulent Transfers were avoidable under applicable law, including Fla. Stat. §§ 726.106(1) and 726.108(1)(a).

95.    As a result of the above, the Trustee is entitled to avoid the transfers pursuant to 11 U.S.C. §§ 544(b)(1) and Fla. Stat. §§ 726.106(1) and 726.108(1).

**WHEREFORE**, The Trustee respectfully requests the Court enter a judgment in her favor against Luis Pimentel: (a) declaring the Fraudulent Transfers to be a fraudulent transfer pursuant to Fla. Stat. § 726.106(1); (b) avoiding and recovering the Fraudulent Transfers as a fraudulent transfer pursuant to 11 US.C. § 544 and Fla. Stat. §§ 726.106(1) and 726.108(1)(a); (c) awarding to the Trustee, for the benefit of the Estate, pre- and post-judgment interest and costs; and (d) granting such other and further relief as may be just and proper.

## COUNT IV
## AVOIDANCE OF FRAUDULENT TRANSFERS
### 11 U.S.C. § 544(b)(1) and Fla. Stat. §§ 726.106(2) and 726.108
### (against Pimentel)

96.    The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 76 above as if specifically set forth herein.

97.    The Trustee sues Pimentel pursuant to 11 U.S.C. § 544(b)(1) and Fla. Stat. §§ 726.106(2) and 726.108(1)(a) to avoid the Fraudulent Transfers as a fraudulent transfer.

98.    The Debtor made the Fraudulent Transfers in the amount of $335,234.00 to Pimentel within the four (4) year period prior to the Petition date.

99.    The Fraudulent Transfers were made to Pimentel who was an insider of the Debtor.

100.    The Debtor was insolvent at the time of the Fraudulent Transfers.

101.    Pimentel had reasonable cause to believe that the Debtor was insolvent.

102.    At the time of the Transfers, the Debtor had at least one actual creditor holding an unsecured claim, including but not limited to the State of Florida Department of Revenue, which is allowable within the meaning of 11 U.S.C. § 544(b)(1), by whom the Transfers were avoidable under applicable law, including Fla. Stat. §§ 726.106(2) and 726.108(1)(a).

103.    As a result of the above, the Trustee is entitled to avoid the transfers pursuant to 11 U.S.C. §§ 544(b)(1) and Fla. Stat. §§ 726.106(2) and 726.108(1).

104.    WHEREFORE, the Trustee respectfully requests the Court enter a judgment in her favor against Pimentel: (a) declaring the Fraudulent Transfers to be a fraudulent transfer pursuant to Fla. Stat. § 726.106(2); (b) avoiding and recovering the Fraudulent Transfers as a fraudulent transfer pursuant to 11 US.C. § 544 and Fla. Stat. §§ 726.106(2) and 726.108(1)(a); (c) awarding to The Trustee, for the benefit of the Estate, pre- and post-judgment interest and costs; and (d) granting such other and further relief as may be just and proper.

## COUNT V
## RECOVERY OF TRANSFERS
### 11 U.S.C. § 550 and Fla. Stat. §§ 726.108 and 726.109
#### (against Pimentel)

105.    The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 76 above as if specifically set forth herein.

106.    The Trustee sues Pimentel pursuant to 11 U.S.C. § 550 and Fla. Stat. § 726.108(1)(a) to recover the Fraudulent Transfers.

107.    The Fraudulent Transfers are avoidable pursuant to 11 U.S.C. §§ 544(b)(1), 548(a)(1)(A), and 548(a)(1)(B); Fla. Stat. §§ 726.105(1)(a), 726.105(1)(b) and/or 726.106(1) and Fla. Stat. § 726.108(1)(a).

108.    With respect to the Fraudulent Transfers, Pimentel was either the initial transferee or individual for whose benefit the Fraudulent Transfers were made under 11 U.S.C. § 550(a)(1); or, alternatively, an immediate or mediate transferee within the meaning of 11 U.S.C. § 550(a)(2).

109.    To the extent that Pimentel was or is found to be an immediate or mediate transferee within the meaning of 11 U.S.C. § 550(a)(2), Pimentel was not a transferee who took for value, in good faith, without knowledge of the voidability of the transfer, within the meaning of 11 U.S.C. § 550(b)(1); or an immediate or mediate good faith transferee thereof within the meaning of 11 U.S.C. § 550(b)(2).

110.    The Fraudulent Transfers are, or the value of Fraudulent Transfers is, recoverable by the Trustee from Pimentel for the benefit of the Debtor's Estate, pursuant to 11 U.S.C. § 550 and Fla. Stat. §§ 726.108 and 726.109.

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Luis Pimentel: (a) declaring Luis Pimentel to be either the initial transferee of the Fraudulent Transfers or entity for whose benefit the Fraudulent Transfers were was made under

11 U.S.C. § 550(a)(1); or, alternatively, an immediate or mediate transferee of the Fraudulent Transfers within the meaning of 11 U.S.C. § 550(a)(2); (b) directing Luis Pimentel to turn over to the Trustee, for the benefit of the Debtor's Estate, the Fraudulent Transfers or the value of the Fraudulent Transfers, plus interest at the applicable statutory rate, reasonable attorneys' fees, and costs and expenses to the extent permissible by applicable law; (c) awarding the Trustee, for the benefit of the Estate, costs under applicable law; and (d) granting such other and further relief as may be equitable and just.

### COUNT VI
### UNJUST ENRICHMENT
### (against Pimentel)

111.    The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 76 above as if specifically set forth herein.

112.    The Debtor made the Fraudulent Transfers to or for the benefit of Pimentel.

113.    The Debtor conferred a benefit on Pimentel by virtue of the Fraudulent Transfers.

114.    Pimentel voluntarily accepted and retained the benefit of the Fraudulent Transfers.

115.    The circumstances render Pimentel's retention of the Fraudulent Transfers inequitable unless Pimentel pays the Debtor the value of the Fraudulent Transfers.

116.    Pimentel was unjustly enriched by virtue of the Fraudulent Transfers and the Trustee is entitled to the return of the value of the Fraudulent Transfers.

117.    Further Pimentel, acting through the Debtor, conferred a benefit upon himself by virtue of the misappropriation of deposits.

118.    Pimentel voluntarily accepted and retained the benefit of the misappropriated deposits.

119.    The circumstances render Pimentel's retention of the misappropriated deposits inequitable unless Pimentel pays the Debtor for the value of such misappropriated funds.

120.    Pimentel was unjustly enriched by virtue of his retention of the misappropriated deposits and the Trustee is entitled to the return of the value of such misappropriated funds.

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Luis Pimentel: (i) granting money damages to the Trustee against Pimentel, for the benefit of the Debtor's Estate, plus pre- and post-judgment interest at the applicable statutory rate, reasonable attorneys' fees, and costs and expenses to the extent permissible by applicable law; (ii) awarding the Trustee, for the benefit of the Estate, costs under applicable law; and (iii) granting such other and further relief as may be equitable and just.

<u>**COUNT VII**</u>
**BREACH OF FIDUCIARY DUTY**
**(against Pimentel)**

121.    The Trustee adopts and realleges Paragraphs 1 through 76 as if fully restated herein.

122.    At all times relevant, Pimentel served as the manager, sole member, and owner of the Debtor.

123.    As a result of the relationship between the Debtor and Pimentel, pursuant to applicable Florida state law, and principles of common law and equity, Pimentel owed the Debtor fiduciary duties of good faith, loyalty, and due care.

124.    As Pimentel was in a position of trust, including, but not limited to, being a manager with duties of accounting regarding any property of the Debtor, the Debtor reasonably relied on Pimentel, and Pimentel abused his position of trust to cause the Debtor to engage in the Fraudulent Transfers to Pimentel.

125.     Pimentel breached his fiduciary duty to the Debtor in bad faith by failing to properly manage the Debtor and oversee its business dealings, knowingly, willfully, and recklessly causing the Debtor to engage in the Fraudulent Transfers, to improperly retain customer deposits, and acting in a manner adverse to the Debtor's interest to Pimentel's gain and to the Debtor's detriment.

126.     Pimentel had an obligation to discharge his duties in good faith and with care that an ordinary prudent officer in a like position would exercise and in a manner reasonably believed to be in the best interests of the Debtor and its creditors, and to consider all material information reasonably available in making business decisions.

127.     Pimentel's negligent acts and omissions proximately caused damages to the Debtor in the hundreds of thousands of dollars. It is reasonably foreseeable that had Pimentel acted in a non-negligent manner, the Debtor would not have suffered these damages.

128.     As a result, the Estate was damaged by a loss in an amount including, but not limited to, the amount of the Fraudulent Transfers.

129.     Also, as a result, the Estate was damaged in the amount of claims asserted against it as they related to improper retention of deposits, failures to render service to clients, failures to comply with regulatory requirements, and related deficient, negligent, reckless, and/or intentionally deficient services.

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Luis Pimentel: (i) granting money damages to the Trustee against Pimentel for the benefit of the Debtor's Estate, plus pre- and post-judgment interest at the applicable statutory rate, reasonable attorneys' fees, and costs and expenses to the extent permissible by applicable law; (ii) awarding the Trustee, for the benefit of the Estate, costs under applicable law; and (iii) granting such other and further relief as may be equitable and just.

## COUNT VIII
### FRAUD
### (against Pimentel)

130.    The Trustee adopts and realleges Paragraphs 1 through 76 as if fully restated herein.

131.    At all times relevant, Pimentel served as the manager, sole member, and owner of the Debtor.

132.    Pimentel, acting through the Debtor, intentionally made misrepresentations of material facts to others or omitted material facts to them.

133.    Pimentel intended that others would rely upon the misrepresentations or omissions.

134.    Others reasonably relied upon Pimentel's misrepresentations or omissions to their detriment.

135.    The Debtor and its creditors suffered damages as a result of Pimentel's misrepresentations and omissions.

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Luis Pimentel: (i) granting compensatory damages, consequential damages, and special damages to the Trustee against Pimentel, for the benefit of the Debtor's Estate, plus pre- and post-judgment interest at the applicable statutory rate, reasonable attorneys' fees, and costs and expenses to the extent permissible by applicable law; (ii) awarding the Trustee, for the benefit of the Estate, costs under applicable law; and (iii) granting such other and further relief as may be equitable and just. The Trustee reserves the right to seek punitive damages at the appropriate time

## COUNT IX
## NEGLIGENCE
## (against Pimentel)

136.    The Trustee adopts and realleges Paragraphs 1 through 76 as if fully restated herein.

137.    This is an action by the Trustee against Pimentel for negligence based upon negligent, grossly negligent and/or reckless acts and omissions.

138.    Pursuant to applicable Florida state law, and principles of common law and equity, Pimentel owed a duty to the Debtor and its creditors.

139.    As set forth herein, Pimentel breached his duties owed to the Debtor and its creditors, and his actions or inactions caused the loss of revenue, loss of corporate value, lost profits, and waste and misappropriations of the Debtor's last remaining assets in an irresponsible and grossly negligent manner, with no conceivable benefit for the Debtor or its creditors.

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Luis Pimentel for compensatory damages, consequential damages, and special damages including, but not limited to: (i) the loss of profits, loss of corporate value, loss of assets and other diverted property as a result of Pimentel's negligent and reckless misconduct; (ii) the increased/deepened insolvency of the Debtor; (iii) the increased liabilities of the Debtor; (iv) the loss and decrease in value of the assets of the Debtor; and (v) corporate waste damages, along with (vi) an award of pre-judgment and post-judgment interest, court costs; and (vii) granting such other and further relief as may be equitable and just. The Trustee reserves the right to seek punitive damages at the appropriate time.

## COUNT X
## IMPOSITION OF CONSTRUCTIVE TRUST
### (against Pimentel)

140.    The Trustee adopts and realleges Paragraphs 1 through 76 as if fully restated herein.

141.    This is an action by the Trustee against Pimentel for the imposition of a constructive trust against the 153rd Court Property and the Tesla.

142.    Pimentel is the beneficiary of funds of the Debtor and/or one of the Debtor's alter ego entities, which were fraudulently transferred, wrongly misappropriated, and improperly used toward the purchase of the 153rd Court Property.

143.    The funds of the Debtor and/or one of the Debtor's alter ego entities were further fraudulently transferred, wrongfully misappropriated, and improperly used toward payments on the Mortgage for the 153rd Court Property.

144.    Upon information and belief, the wrongful misappropriation of funds of the Debtor and/or one of the Debtor's alter ego entities is presently ongoing and being used toward payments on the Mortgage for the 153rd Court Property.

145.    Pimentel has benefitted by the wrongful misappropriation of funds of the Debtor and/or one of the Debtor's alter ego entities, which were used to purchase the 153rd Court Property and to maintain payments on the Mortgage on the 153rd Court Property.

146.    The funds used by Pimentel to purchase the 153rd Court Property and to maintain payments on the Mortgage on the 153rd Court Property are traceable to funds misappropriated by Pimentel from the Debtor and/or one of the Debtor's alter ego entities.

147.    The 153rd Court Property must be held in constructive trust as Pimentel is not entitled to the benefit of the wrongfully misappropriated funds of the Debtor and/or one of the

Debtor's alter ego entities that were used to purchase the 153rd Court Property and maintain payments on the Mortgage on the 153rd Court Property.

148.    Pimentel is also the beneficiary of funds of the Debtor and/or one of the Debtor's alter ego entities, which were fraudulently transferred, wrongly misappropriated, and improperly used toward the payments for Pimentel's Tesla.

149.    The funds of the Debtor and/or one of the Debtor's alter ego entities were further fraudulently transferred, wrongfully misappropriated, and improperly used toward payments on the Tesla Loan for Pimentel's Tesla.

150.    Upon information and belief, the wrongful misappropriation of funds of the Debtor and/or one of the Debtor's alter ego entities is presently ongoing and being used toward payments on the Tesla Loan for Pimentel's Tesla.

151.    Pimentel has benefitted by the wrongful misappropriation of funds of the Debtor and/or one of the Debtor's alter ego entities, which were used to maintain payments on the Tesla Loan.

152.    The funds used by Pimentel to maintain payments on the Tesla Loan are traceable to funds misappropriated by Pimentel from the Debtor and/or one of the Debtor's alter ego entities

153.    Pimentel's Tesla must be held in constructive trust as Pimentel is not entitled to the benefit of the wrongfully misappropriated funds of the Debtor and/or one of the Debtor's alter ego entities that were used to maintain payments on the Tesla Loan.

**WHEREFORE**, the Trustee respectfully requests the Court enter a judgment in her favor against Luis Pimentel: (i) imposing a constructive trust against the 153rd Court Property and Tesla; (ii) disgorging Pimentel of all funds of the Debtor and/or one of the Debtor's alter ego entities

which were wrongfully misappropriated by Pimentel with respect to the 153rd Court Property and Tesla; and (iii) granting such other and further relief as may be equitable and just.

**COUNT XI**
**DECLARATORY JUDGMENT**
**(28 U.S.C. § 2201)**
**(against Exclusive Accordions LLC)**

154.    The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 76 above as if specifically set forth herein.

155.    The Trustee sues Defendant Exclusive Accordions LLC seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, Bankruptcy Rule 7001(9), and Florida Statutes § 86.061, determining that Exclusive Accordions LLC is a mere instrumentality and alter ego of the Debtor.

156.    The Trustee is in doubt and uncertain as to her power, right, status or other legal or equitable relation arising from and relating to the Debtor's relationship with Exclusive Accordions LLC.

157.    Upon information and belief, Exclusive Accordions LLC has been utilized as a mere instrumentality and alter ego of the Debtor.

158.    This Court has the power to render relief based upon a declaratory judgment when necessary or proper; and if the application is sufficient, this Court should declare that Exclusive Accordions LLC, at all times material hereto, was utilized as a mere instrumentality and alter ego of the Debtor.

159.    A present controversy exists between the Trustee and Exclusive Accordions LLC concerning the forgoing.

160.    A declaration is necessary to determine whether Exclusive Accordions LLC was utilized as a mere instrumentality and alter ego of the Debtor.

161.    It is equitable for this Court to award the Trustee the reimbursement of her costs and expenses in this matter, and such an award is proper pursuant to Florida Statutes § 86.081.

**WHEREFORE**, the Trustee respectfully requests that the Court enter a judgment in her favor against Defendant, Exclusive Accordions LLC: (a) declaring that at all material times Exclusive Accordions LLC was and is mere instrumentality and alter ego of the Debtor; (b) awarding the Trustee, for the benefit of the Estate, costs in accordance with applicable law; and (c) granting such other and further relief as the Court deems just and proper.

<u>**COUNT XII**</u>
**DECLARATORY JUDGMENT**
**(28 U.S.C. § 2201)**
**(against Miami Dade Accordions LLC)**

162.    The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 76 above as if specifically set forth herein.

163.    The Trustee sues Defendant Miami Dade Accordions LLC seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, Bankruptcy Rule 7001(9), and Florida Statutes § 86.061, determining that Miami Dade Accordions LLC is a mere instrumentality and alter ego of the Debtor.

164.    The Trustee is in doubt and uncertain as to her power, right, status or other legal or equitable relation arising from and relating to the Debtor's relationship with Miami Dade Accordions LLC.

165.    Upon information and belief, Miami Dade Accordions LLC has been utilized as a mere instrumentality and alter ego of the Debtor.

166.    This Court has the power to render relief based upon a declaratory judgment when necessary or proper; and if the application is sufficient, this Court should declare that Miami Dade

Accordions LLC, at all times material hereto, was utilized as a mere instrumentality and alter ego of the Debtor.

167.    A present controversy exists between the Trustee and Miami Dade Accordions LLC concerning the forgoing.

168.    A declaration is necessary to determine whether Miami Dade Accordions LLC was utilized as a mere instrumentality and alter ego of the Debtor.

169.    It is equitable for this Court to award the Trustee the reimbursement of her costs and expenses in this matter, and such an award is proper pursuant to Florida Statutes § 86.081.

**WHEREFORE**, the Trustee respectfully requests that the Court enter a judgment in her favor against Defendant, Miami Dade Accordions LLC: (a) declaring that at all material times Miami Dade Accordions LLC was and is mere instrumentality and alter ego of the Debtor; (b) awarding the Trustee, for the benefit of the Estate, costs in accordance with applicable law; and (c) granting such other and further relief as the Court deems just and proper.

**COUNT XIII**
**DECLARATORY JUDGMENT**
**(28 U.S.C. § 2201)**
**(against All Star Shutter LLC)**

170.    The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 76 above as if specifically set forth herein.

171.    The Trustee sues Defendant All Star Shutter LLC seeking a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, Bankruptcy Rule 7001(9), and Florida Statutes § 86.061, determining that All Star Shutter LLC is a mere instrumentality and alter ego of the Debtor.

172.    The Trustee is in doubt and uncertain as to her power, right, status or other legal or equitable relation arising from and relating to the Debtor's relationship with All Star Shutter LLC.

173.    Upon information and belief, All Star Shutter LLC has been utilized as a mere instrumentality and alter ego of the Debtor.

174.    This Court has the power to render relief based upon a declaratory judgment when necessary or proper; and if the application is sufficient, this Court should declare that All Star Shutter LLC, at all times material hereto, was utilized as a mere instrumentality and alter ego of the Debtor.

175.    A present controversy exists between the Trustee and All Star Shutter LLC concerning the forgoing.

176.    A declaration is necessary to determine whether All Star Shutter LLC was utilized as a mere instrumentality and alter ego of the Debtor.

177.    It is equitable for this Court to award the Trustee the reimbursement of her costs and expenses in this matter, and such an award is proper pursuant to Florida Statutes § 86.081.

**WHEREFORE**, the Trustee respectfully requests that the Court enter a judgment in her favor against Defendant, All Star Shutter LLC: (a) declaring that at all material times All Star Shutter LLC was and is mere instrumentality and alter ego of the Debtor; (b) awarding the Trustee, for the benefit of the Estate, costs in accordance with applicable law; and (c) granting such other and further relief as the Court deems just and proper.

## COUNT XIV
### TURNOVER OF PROPERTY OF THE ESTATE
### (11 U.S.C. §§ 541, 542)
### (against Exclusive Accordions LLC; Miami Dade
### Accordions LLC; and All Star Shutter LLC)

178.    The Trustee adopts and realleges each and every allegation contained in Paragraphs 1 through 76 above as if specifically set forth herein.

179.    The Trustee sues Defendants Exclusive Accordions LLC, Miami Dade Accordions LLC, and All Star Shutter LLC seeking turnover of the respective Defendants' books and records pursuant to 11 U.S.C. §§ 541, 542, by virtue of the aforementioned Defendants' status as mere instrumentalities and alter egos of the Debtor.

180.    As a mere instrumentality or alter ego of the Debtor, all of Exclusive Accordions LLC's books and records are property of the Estate and subject to turnover.

181.    As a mere instrumentality or alter ego of the Debtor, all of Miami Dade Accordions LLC's books and records are property of the Estate and subject to turnover.

182.    As a mere instrumentality or alter ego of the Debtor, all of All Star Shutter LLC's books and records are property of the Estate and subject to turnover.

183.    Accordingly, pursuant to section 542 of the Bankruptcy Code, Defendants Exclusive Accordions LLC, Miami Dade Accordions LLC, and All Star Shutter LLC must turn over to the Trustee their respective books and records as property of the Estate.

**WHEREFORE**, the Trustee respectfully requests that the Court enter a judgment in her favor against Defendants Exclusive Accordions LLC, Miami Dade Accordions LLC, and All Star Shutter LLC: (a) declaring that the respective books and records of each Defendant are property of the Estate; (b) ordering that each Defendant turn over their respective books and records to the Trustee; and (c) granting such other and further relief as the Court deems just and proper.

Dated: September 30, 2020

**DUNN LAW, PA.**

*Counsel for Plaintiff, Marcia T. Dunn,*
*as Chapter 7 Trustee*
66 West Flagler Street, Suite 400
Miami, Florida 33130
Phone: (786) 433-3866
Fax:    (786) 260-0269
michael.dunn@dunnlawpa.com
jerrod.maddox@dunnlawpa.com

By:    /s/ *Jerrod M. Maddox*
        Michael P. Dunn, Esq.
        Fla. Bar No. 100705
        Jerrod M. Maddox, Esq.
        Fla. Bar No. 117820